21-1153. Attorney Rapaway, please introduce yourself for the record and proceed with your argument. Good morning, Your Honors. Gregory Rapaway of Kellogg Hanson for Appellant Brian Coughlin. I'd like to reserve two minutes for rebuttal, if I may. You may. Thank you, Judge Lynch. May it please the Court. The Bankruptcy Code clearly provides for the use of the word  may assert sovereign immunity against the jurisdiction of a federal bankruptcy court to enforce its automatic stay. That includes a tribal government, which falls within the broad statutory phrase governmental unit and the even broader defining phrase foreign or domestic government. Tribe is a government within the ordinary meaning of that word, and tribes are governments under a functional approach as well because they perform the public functions that many provisions of the Bankruptcy Code protect and privilege. And they can assert sovereign immunity as the tribe seeks to do here, which is also called governmental immunity precisely and only because of their status as governments. Tribes are both clearly governments and also clearly domestic governments. They're within the geographical territory of the United States. They are subject to the plenary authority of Congress. And so Congress's words of definition, like its words of abrogation, are unequivocal in their application to tribes. Reading an exception for tribes into that plain language would not only depart from its meaning, it would also do violence to the structure and purpose of the Bankruptcy Code. It would make tribal governments and tribal businesses like the payday lender here the only entities in the world that can willfully disregard a bankruptcy court's automatic stay or a discharge injunction without facing consequences. And more than that, the tribe's construction of the statute would also deprive other tribes and their agencies of benefits that Congress did convey to them. Special treatment for tribally imposed taxes, fines, and domestic support obligations all depend on tribes' status as governmental units. The statute that Congress wrote protects those things, and the tribe's revision of it would not. I'd like to begin by discussing the point, which I think is at the heart of this case, that the traditional tools of statutory construction do apply here, and there are no separate rules of statutory construction for cases involving tribes, tribal sovereignty, or tribal immunity. I think that those points are established in this circuit by the decisions in Penobscot and Aristok and Narragansett. And I think that's consistent with the Supreme Court's discussion in the Cooper case, which dealt with the sovereign immunity of the United States, and that rejected any sort of magic words requirement, and it treated the tool or the presumption that sovereign immunity has not been abrogated or waived as a tool for understanding the statute, rather than a departure from the meaning of the statute. And in applying the traditional tools of statutory construction, one begins, of course, with the text. And in this case, I think it is helpful to start with the operative language, broaden the immediate context of that language, and then proceed to consider the context and purpose of the statute as a whole. The operative language in Section 106A is largely undisputed. There is no immunity for a governmental unit. Sovereign immunity of a governmental unit is abrogated. And the ordinary meaning of the language of 10127 is largely, if not entirely, undisputed. The key phrase is other foreign or domestic government. And tribes are governments because they have constitutions, they have laws, and in general, they exercise political authority on behalf of their members. Can I ask you, is there a difference between domestic government and domestic dependent nation? There is a difference in the words, Your Honor, but I think that tribes are both. Obviously, domestic dependent nations contains the term dependent, which distinguishes tribes from other sovereigns. And that was the point that Justice Marshall was making in the Cherokee Nation case. And a nation, in some contexts, can be different from a government. But in this context, I would say it is not. I think that the distinction, the cases use the term nation and government in reference to tribes fairly interchangeably. And many decisions of the Supreme Court and other courts and many statutes refer to tribes as governments or as governmental. And in particular, I'd like to call the court's attention to the discussion in the Chahalas decision, which we cite in our reply, which describes a government-to-government relationship with the United States as part of the definition of a federally recognized tribe. And the tribe's assertion of immunity here depends on its ability to hold itself out as a federally recognized tribe. That is one which the United States recognizes as a government. Turning to the words foreign or domestic. Just to the question Judge Brewer was asking, there's a version of it, I think, which is that the words dependent and nation are significant, potentially, because they suggest that the tribe status in relation to any other governments of the United States is unique. Correct? Yes, there certainly are senses in which the tribes are unique. Right. And so I guess the question is whether, and this is just the company that keeps canon, being asserted in 101-27 by your opponent, which is why not say that the most sensible reading of that is that the catch-all phrase there is not a catch-all for things that are not connected to the types of governments just listed, but it's a catch-all to pick up entities that are like the governments just listed, such as the UN, which is a collection of foreign states, the interstate compacts, which is a collection of states, etc. Rather than reading it to say, and also this other type of thing, which is a distinct type of government altogether and which is notably not listed along with the other types of entities. So my answer to that, Judge Barron, would be that you apply that canon, the associative canons, either of them really, by identifying the common characteristic, as you say, in the preceding list. And the common characteristic of the things in the preceding list is that they are governments. Well, it's a common characteristic, but you say it's the common characteristic. And I guess since you could clearly say that the list is a list of these things, and then you might think the other foreign or domestic governments are governments that are comprised of those things, as opposed to comprised of something unrelated to them entirely. Why not include that? Because I would urge the court to read the phrase foreign or domestic, Judge Barron, as a dichotomy, as the Ninth Circuit put it in Crystal Energy, as a way of saying that the foreign or domestic status of a government is irrelevant. And therefore, included within that phrase would be any government, regardless of its relationship to what we might call the United States federal state constitutional order. That's what I'm saying. Given the listing, the conscious listing of a set of things that are not irrelevant to that order, why not read the catch-all to be cabined by the fact that the listing is of those things that are related to it, or foreign states in their own right, neither of which a tribe fits into? Well, as far as the immediate language, Your Honor, I would point to, as evidence that that was not what was intended, I would point to the use of the word or, which is considered to be disjunctive, and which therefore shows an intent to include additional things that were not previously listed. But then, and if that's not persuasive, I would turn to the broader context of the statute, and to this court's statement in the T.I. Federal Credit Union case that government needed to be read functionally. And so what would give guidance about what types of things are meant to be governments under the statute would be things that perform governmental functions. And I think that looking at that broader structure and purpose of the statute is extremely important here, because what's at stake in this case is the enforcement of the automatic stay and the discharge injunction, which are foundations of the federal bankruptcy system. And the historical roots of that system go back precisely to the need to protect debtors in the courts of a single sovereign, regardless of whether multiple sovereigns might assert claims against them or might attempt to enforce various creditors' claims against them. And that not only protects debtors, but also protects creditors, because it avoids the race of diligence that would otherwise ensue, because other creditors would need to ensure that a creditor, such as the payday lender here, was not able to get the assets of a debtor who might not be able to pay all of his or her debts. And then, too, I think that you would read governmental unit to include tribes, because in so many ways in the bankruptcy code, Congress recognized the importance of giving special protections to governmental units. That's one of the points I raised earlier on, but I'd like to expand on it a little bit. The code does provide special treatment for taxes, special treatment for police and regulatory powers, special treatment for alimony and child support. And so if you look at a governmental entity, like a tribe, that does all of those things, and it is undisputed that tribes do all those things, this tribe in its constitution, its laws, does all of those things, why would Congress have wanted to exclude the tribe? Before 106A was enacted, 10127 in its current form was already there. That's correct, Your Honor. And do we have any case law pre the enactment of 106A that would argue we have informed Congress as to whether tribes were relying on the definition of 10127, and say to get priority with respect to debts, with respect to their ability to take advantage of the exception to the stay or the like? Is there any prehistory to 106A about how 10127 was construed with respect to tribes? I do not have a case for that proposition, Your Honor. I think that I would say that the statute should still be read as a whole as it stands today, and that we would presume that Congress would have been aware that tribes are governments, and would receive the special benefits and protections as well as the special obligations that go to government. At least at the time Congress enacted 106A, it's not as if there was a body of case law that would have indicated to them that in keying 106A to 10127, they were necessarily adopting a view of 106A that would apply to tribes. Other than just the textual points you've made, it's not as if there's a background history indicating that the code was operating in a way in which tribes were being treated as governmental units. I would say the textual points, Your Honor, and perhaps you'll think this is part of the textual point, but certainly it was established by that point that a federally recognized tribe was one with a government-to-government relationship with the United States. If an individual member of Congress was trying to figure out what this statute would do, they would go and they would look at the definition of a tribe, a federally recognized tribe, and they would see not only cases, but very specifically statutory provisions and regulatory provisions. Just as a way of testing out the canon, the company that keeps canon, suppose 10127 read just as it does now, except it didn't include the word state or municipality. Would you think 106A abrogates state sovereign immunity? I would still argue that the phrase other foreign or domestic government would be sufficiently broad, Your Honor, but I acknowledge that would be a harder case. Okay, and see, that's the problem for me. Since it was the harder case, if you drop state from it, I guess I have the same question. Well, why is it a little bit of a harder case when you drop tribe? Obviously, a state is a government, but it does raise the question. Gee, they didn't mention state, so maybe they weren't thinking of state sovereign immunity. And the same type of thing, I think, arises in my mind with respect to tribe, given how distinct a type of government it is, that since it's not listed, maybe the omission of it suggests maybe they really weren't thinking of tribal immunity. I understand the concern Your Honor is expressing, but I would answer it by saying, I do think that reduces in substance to a requirement that tribes be named in specific terms, which has been rejected by this court on numerous occasions and by the Supreme Court in analogous circumstances. Okay, thank you. Are there further questions? Okay, we'll hear you on rebuttal. Attorney Rapoport, please mute your audio and video. Attorney Adams, please unmute your audio and video, introduce yourself for the record, and proceed with your argument. Good morning. May it please the court. My name is Andrew Adams III, and I'm here on behalf of the Lake, the Lac du Flambeau Band of Lake Superior Chippewa Indians and the other appellees. Congress has not unequivocally expressed its intention to abrogate tribal sovereign immunity in the bankruptcy code, a law that does not once mention Indian tribes or anything like Indian tribes in the statutory text. But counsel, of course, if the term government and then especially domestic governments includes tribes, there would certainly be no reason for a special discussion of tribes, now would there? Your Honor, in response to that question, I would respectfully disagree. The Supreme Court has expressly said and instructed time and again that it is Congress's intent to abrogate tribal sovereign immunity. The law in this circuit is quite clear that if you look at the text of the statute and it is unambiguous, that then no special canons of construction apply to claims by trials. Do we agree on that? Judge Lynch, when it comes to Indian tribes, I respectfully disagree. The Supreme Court again has stated that any abrogation of tribal sovereign immunity must be clearly and unequivocally expressed. Okay, so your argument is, as Judge Bailey reasoned, unless there is an express reference to tribes, then it's not a clear abrogation. Yes, I would agree with that proposition, Judge Lynch. That's, I thought, not your view, but maybe it now is. I thought if 106A had said, notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to any entity that has sovereign immunity, you would take the view that that would cover tribes, wouldn't you? Judge Barron, is that, I'm sorry, is that question directed to me or to Judge Lynch? It's to you. Okay, okay. I would take the proposition, Judge Barron, that in your statement, if 106A said that for any entity that contains sovereign immunity that it's hereby abrogated, I still fall back to the statements that the Supreme Court has made when it comes to tribal sovereign immunity. They've made the same statements with respect to states. And you wouldn't take the position that an abrogation provision like that doesn't abrogate state sovereign immunity, would you? I wouldn't necessarily take that statement, but when it comes to tribes... with respect to their sovereign immunity than states do, there's no authority for that. No, I wouldn't take the standpoint that there's a proposition to support that statement. My argument, though, is that Congress knows how to... They also know how to reference states. But if the statute said sovereign immunity is abrogated as to all governments that have sovereign immunity, you're telling me that that would not abrogate sovereign immunity for a tribe? Okay, thank you for that clarification. If the statute said expressly that it applied to all governments, and I think the key phrase is all, then yes, I believe that there could be an argument that it does apply to tribes. But in this situation, we don't... I'm sorry, the connection... If it said all domestic governments? Sovereign immunity is abrogated for all domestic governments that have sovereign immunity. You would say that does or does not apply to tribes? Judge Barron, I guess I'm being extremely stubborn when it comes to this point, but I fall back on the proposition that the Supreme Court has instructed. Suppose I disagreed with you that there has to be an express reference to tribes any more than there has to be an express reference to states. Can you win? I do believe that I can win if the statute never mentions Indian tribes, and there is no evidence that Congress unequivocally expressed its intent to apply to tribes. Okay, why don't you explain why the reference to domestic government shouldn't be read to be the unequivocal intention without simply saying that because the words don't mention tribes, that does it? Well, and I think it goes back to the line of questioning, Judge Barron, that you asked of the appellants concerning the unique status of Indian tribes. I would argue that tribes, and you mentioned domestic dependent nations, I believe that Chief Justice Marshall back during the Marshall Trilogy used that term and crafted this very unique under American jurisprudence, this very unique legal identity and status for tribes under American jurisprudence, and that continues to today as evidenced in Bay Mills and the United States v. Dion and in Kiowa where the Supreme Court has consistently upheld the unique status of tribes and their unique sovereign immunity from suit in contested actions. Mr. Adams, if I have understood the argument, you would say that if, well, no, actually you wouldn't agree with this, that if the statute referred to domestic dependent governments and it is the omission of the word government, you nonetheless would argue that's probably not quite enough. Is that correct? Judge Lynch, it is correct from the standpoint that, again, I would argue that Congress knows how to abrogate tribal sovereign immunity. Thank you. Why should the word dependent be used to carve out an exception to domestic governments? Because the very nature of the term dependent is that the sovereignty is always subject to what Congress wants and that, if anything, the clause dependent used in the case law but not in the text actually supports abrogation here. Judge Lynch, I would not disagree that Congress has plenary authority over tribes. They do, and Congress has, there's numerous examples of Congress waiving the sovereign immunity of tribes of abrogating it. You see that in the Safe Drinking Water Act. You see it in a number of other statutes. But various circuit courts, the 8th, the 7th, the 6th, and numerous cases in Myers and in Buchwald have taken cases, whether it was a bankruptcy code or the Fair and Accurate Credit Transaction Act, where there's no mention of tribes, there's no mention of anything like tribes, and they have upheld the proposition that Congress's lack of mentioning tribes is evidence that Congress did not intend for those statutes to abrogate tribal sovereign immunity. Let's just take 101-27, put aside 106-A for the second, okay? And imagine we're in the world before 106-A was passed. So we just had the definition of government unit. And the question in the case was a tribe trying to take advantage of the priority benefit that the code gives to government units with respect to certain claims. Okay? Yes, sir. In that situation, would you read 101-27 to include a tribe as a domestic government? Without any mention of tribes at all in the statute, Your Honor? It's only to their benefit if they're included. There's no question of sovereign immunity. And so I'm just asking you to read 101-27. And would we then read domestic government to include a tribe? I would argue that it cannot be inferred, Your Honor, that the statutory text has to be clear when it comes to an abrogation of tribes. You're just missing my hypothetical. Okay. 101-27 existed before 106-A. Okay. So it serves a function in the code independent of 106-A. Correct? Correct. Okay. Prior to 106-A, the question could arise as to whether the tribe could take advantage of a provision in the code to its benefit, such as the one that gives priority status to a creditor, I think, who is a government unit. Correct? Correct. So in that situation, if the tribe said, I want that priority status, I qualify as a government unit, would you read 101-27 to include the tribe as a domestic government, or would you not? I don't know if I would read a tribe as a domestic government if the statute doesn't explicitly include tribes in that hypothetical. And I apologize for being stubborn and obstinate, but I... about not reading it was that sovereign immunity protections require it to be clear, but the hypothetical I'm giving you, there's no sovereign immunity canon in play. Tribes are not subject to having their sovereign immunity abrogated. They're just getting the benefit of priority status as a creditor, and they can only claim that benefit if they qualify as a government unit. So I'm just asking you, under 101-27, do they? I don't know the answer to that question, Judge Barron. So a statute that I would look to for, say, some insight would be the Family and Medical Leave Act, where tribes are not mentioned at all. They're not mentioned at all in that statute, and there's a question as to whether tribes have to adhere to it, despite the fact that they're treated as governments. You want to give examples in which their immunity would be threatened, and I want to give examples in which it would not be, and yet they would still benefit from being treated as a government unit. Because that helps us take away the issue of the canon regarding sovereign immunity, and allows us to just focus on the text of government unit and what it means. And from my standpoint, Judge Barron, I think the point that I'm trying to make is that tribes are unique under American jurisprudence. It's extremely difficult to apply. For one thing, there is the canon which favors tribes, in which we often construe ambiguous language to include them when doing so would be to their benefit. I would agree with that, and I would also... So that domestic government would include tribes, since there's an ambiguity. Yeah, and I would agree, Judge Barron, that ambiguities in federal law have been construed generously in order to comport with notions of sovereignty and federal policy and tribal independence. Mr. Adams, just to pursue the hypothetical, assume in the pre-106A days that a tribe did seek priority status, and a creditor, sorry, that the tribe ends up trying to take advantage of the law to its benefit. But the opposing party then says, oh no, you don't get that advantage because your immunity has been abrogated. So this is sort of a question about a two-way ratchet, and whether the two-way ratchet operating differentially, depending on whether there is a benefit to the tribe or not, itself has some logical flaws because it doesn't account for the other party. I'm sorry, are you following me? I'm doing my best, Judge Lynch. That's an unfair question for a judge to ask a lawyer. That's okay, thank you. I am counsel. Well, I guess let me just ask a version of that question. Are you saying that under your view, tribes cannot have 10127 read to include them in any circumstance under the code? How? So I'm not making that argument, Judge Barron. It seems, I guess what I'm struggling with is I get the impression that there's a sense that you all believe that I believe that tribes under this situation should have their cake and eat it too. No, I'm just asking whether your view is that 10127, outside the context of circumstances under the code where their immunity is threatened, includes tribes or not. If their immunity isn't threatened and there are ambiguities in the statute that could benefit tribes, then I believe that those ambiguities have to be construed in their favor. So that means you're asking us to read 10127 to include them for some purposes and exclude them for others, is that right? Yeah. I'm not asking you to give my client or other tribes some special... I'm not saying it's special or anything. I just want to know the outcome. Is your view that 10127, in referring to domestic governments, includes tribes for some purposes and excludes them for others? No. My argument is that if tribes are not mentioned specifically in that part of the statute, then if it's to a detriment, it cannot be held against them. If it's to a benefit, I guess that's up for a court to determine whether it applies to them or not. Okay. Thank you. We'll hear the rebuttal argument now. Attorney Adams, please mute your audio and video. Attorney Rapaway, please unmute your audio and video and proceed with your rebuttal time. Thank you, Your Honors. Very briefly, to the point that was previously under discussion, I think that trying to read a statutory definition two ways in the same statute is the kind of departure from the traditional principles of statutory construction that this court has indicated in its various cases, Penobscot and the predecessor cases, would not occur even in a tribal sovereignty context. So can you help me how to think through what I'm supposed to do? There is this odd quality of the way that the statute's structured in the sense that the definition is not just about abrogating immunity. It has all kinds of functions in the code. And that definition predates the express abrogation provision. As I understand it, Congress mistakenly thought they had abrogated prior to the express abrogation that 106 now includes, or at least there's some reason to think they thought that. When I look at 10127, and obviously if it clearly includes tribes, this issue goes away. If it clearly excludes them, the issue goes away, insofar as there's an ambiguity as to whether domestic government includes tribes or not. On the one hand, there's the Indian canon, which suggests I should read it in favor of the tribe when it would benefit them. And on the other hand, there's the tribal sovereign immunity canon that suggests I should read it to exclude tribes when it would result in the abrogation of their immunity. So what am I supposed to do when I have a unitary provision that applies in both circumstances under the code and I have two competing canons? If you would find 10127 to be ambiguous without the benefit of the larger structure of the code, I think you should look at the entire structure of the code and look at Congress's purpose. And I think Congress's purpose was to define a way in which it would treat governments. And I think tribes are governments for the purposes that Congress cared about. And I think that one of the, you know, the piece that's at issue in this case... Go ahead, please. I don't think that Congress would have thought that immunizing a tribal payday lender because it was attached to a government would be a reason to depart from the plain meaning of the statute. Okay. Any further questions? No. Thank you. That concludes the argument for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may disconnect from the meeting.